# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

JERRY WAYLAND FORRESTER                                    PLAINTIFF

v.                              No. 4:17CV00738-JTR

RUSTY PAGE, Sergeant;
GARRY STEWART, Doctor;
MONTE MUNYAN, Nurse; and
ANDREW HUMPHREY, Officer,
Faulkner County Detention Center Unit 1                     DEFENDANTS


## <u>**MEMORANDUM OPINION**</u>[1]

Plaintiff Jerry Wayland Forrester ("Forrester") has filed this *pro se* § 1983 action alleging that, while he was incarcerated at the Faulkner County Detention Center ("FCDC"): (1) Defendants Sergeant Rusty Page ("Sgt. Page"), Officer Andrew Humphrey ("Officer Humphrey"), Dr. Garry Stewart ("Dr. Stewart"), and Nurse Monte Munyan ("Nurse Munyan") failed to provide him with constitutionally adequate medical care for back injuries he sustained, on October 11, 2017, when he fell while getting out of a transport van; and (2) Dr. Stewart denied him medical care in retaliation for Forrester previously filing a lawsuit against him. *Docs. 2 & 6.*[2]

---

[1] All parties consented in writing to allow a United States Magistrate Judge to exercise jurisdiction over this case, as provided for under 28 U.S.C. § 636(c). *Doc. 17.*

[2] Forrester's claims are stated in his *pro se* Complaint and Amended Complaint. *See Kiir v. N.D. Pub. Health,* 651 Fed. Appx. 567, 568 (8th Cir. 2016) (amendment "intended to supplement, rather than to supplant, the original complaint," should be read together with original complaint);

Forrester named all Defendants in their individual *and* official capacities, but his only requested relief is monetary damages.

Defendants have filed a Motion for Summary Judgment arguing they are entitled to judgment, as a matter of law, on all of Forrester's claims. In support of their Motion, they rely on a Memorandum of Law and a Statement of Indisputable Material Facts. *Docs. 36, 37 & 38.* Although notified of his right to file a Response, Forrester has not done so. *See Doc. 39.* Thus, all issues are fully joined and Defendants' Motion for Summary Judgment is ready for disposition.[3]

## I. Facts

Before addressing the merits of Defendants' arguments, the Court will summarize the relevant facts, all of which are undisputed.[4]

---

*Cooper v. Schriro,* 189 F.3d 781, 783 (8th Cir. 1999) (*pro se* pleadings must be liberally construed).

[3]Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial. *See* Fed. R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011).

[4]Although given the opportunity to do so, Forrester did not filed a Statement of Disputed Facts or otherwise contest anything in Defendants' Statement of Indisputable Material Facts (*Doc. 38*). Accordingly, Defendants' Statement of Facts is now deemed *undisputed*. *See* Fed. R. Civ. P. 56(e) ("If a party … fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion."); *Jackson v. Ark.*

2

1.     On July 29, 2017, Forrester was booked into the FCDC. *Doc. 38, Ex. A-1 at 38* (Arrest/Booking).

2.     On August 7, 2017, he informed FCDC medical personnel that, in November 2016, he underwent back surgery, during which rods and screws were affixed to his spine. The FCDC obtained Forrester's prior medical and pharmacy records and placed them in his medical file. *Id., Ex. A-3 at 13-64, 67-124 & 129-38* (Medical File). Those medical records confirmed that Forrester had undergone back surgery.

3.     From August 2017 through early October 2017, Dr. Stewart, the physician for FCDC, prescribed various pain and anti-inflammatory medications to address Forrester's complaints of chronic lower back pain. Those medications included ibuprofen, naproxen, diclofenac, meloxicam, tylenol, and prednisone. *Id., Ex. A-3 at 65-66, 139-40, 144-54, 198-218, & Ex. B ¶ 2* (Stewart Aff.).

4.     On October 11, 2017, Forrester was transported in a van from FCDC Unit 2 to FCDC Unit 1. As he exited the van, he fell and injured his lower back. *Doc. 2 at 4.*

5.     On October 12, 2017, at 10:49 a.m., Forrester submitted an Inmate Medical Request, stating: "I need to see doctor A.S.A.P. I fell out of your van last

*Dep't of Educ. Vocational & Technical Div.*, 272 F.3d 1020, 1027 (8th Cir. 2001) (citing Local Rule 56.1(c) in concluding that the plaintiff "forfeited her ability to contest the facts presented" by defendant by failing to respond to defendant's summary judgment motion).

night and I hurt myself bad. I need an MRI so you people need to help me. Thank you." *Doc. 38, Ex. A-4 at 59* (Inmate Medical Requests).

6. Later on October 12, Forrester submitted another Inmate Medical Request and two FCDC grievances, all asserting that he had hurt his back, was losing feeling in his leg, and needed to go to the hospital. *Id., Ex. A-4 at 58, & Ex. A-2 at 40-41* (FCDC Grievances).

7. On October 12, at 4:33 p.m., Nurse Munyan submitted the following written response to Forrester's Inmate Medical Requests: "You were observed and did not appear to be in distress. You were able to get up off the floor, walk around, move your mat and lay back down again without grimacing. You will be seen during sick call tomorrow." *Id., Ex. A-4 at 58-59.*

8. Also on October 12, Dr. Stewart reviewed Forrester's chart and wrote: "May take OTC NSAIDS [nonsteroidal anti-inflammatory drugs]. No evidence of fall and no evidence of neurological changes. Continue conservative care for possible low grade contusion. Encourage low impact stretching exercises." *Id., Ex. A-3 at 155-56.*

9. On October 12 at 5:28 p.m. and 5:48 p.m., Sgt. Page responded in writing to Forrester's two grievances. His responses stated that "the Dr. [was] coming to see [Forrester] tomorrow," and that he needed to submit any medical complaints in an Inmate Medical Request. *Id., Ex. A-2 at 40-41.*

4

10. On October 13, 2017, Forrester was seen in the FCDC medical clinic by unidentified medical staff. According to the chart notes, the following interaction took place between Forrester and the medical provider:

> Jerry Forrester, 203, Back pain: States his last surgery was Nov 2016 where rods were placed, he has 9 more months of time here at FCSO, he fell out of the van two days ago hurting his left knee and exacerbating pain in his lower back and initiating numbness of right leg which is getting worse every day. BIL cap refill and temperature are bilaterally equal of BLE, no discoloration of lower right extremity, his knee has no sign of trauma and he stated the swelling had gone down and feels better. He verbally states understanding that there is nothing wrong with his leg and that it is most likely related to nerve issues in his back. <u>He is requesting an MRI to make sure nothing is seriously wrong with his back.</u> Ibuprofen 800 mg BID causes him stomach pain and has requested it be stopped, done, he is on meloxicam 15 mg q24 and naproxen 500 bid and diclofenac 75 bid. When observed from tower he does not grimace or limp, lowers himself to mat on floor and gets up off of floor without prolonged action or grimace but limps into clinic making pain faces. He was at Unit One yesterday when [Dr. Stewart] reviewed his chart at Unit Two and stated no change in POC [point of care].

*Id., Ex. A-3 at 157-59.*

11. On October 16, 2017, Forrester submitted an Inmate Medical Request stating he needed to see the doctor.[5] *Id., Ex. A-4 at 57-58.*

12. On October 19, 2017, Dr. Stewart evaluated Forrester for back pain. He noted Forrester's prior back surgery and his complaint that the current point of care

---

[5]Nurse Munyan responded to this Inmate Medical Request *shortly after* Forrester saw Dr. Stewart on October 19. *Doc. 38, Ex. A-4 at 58* ("You saw [the doctor] today and you will continue the naproxen.").

had provided no improvement in his chronic back pain. Dr. Stewart also noted that the nurse had "watch[ed] Mr. Forrester on the monitor last week without evidence of pain or restriction of ADL [activities of daily living]." Based on his physical examination of Forrester, Dr. Stewart told him to continue taking the prescribed naproxen for his lower back pain.[6] *Id., Ex. A-3 at 160.*

13.    Shortly after seeing Dr. Stewart on October 19, Forrester filed an Inmate Medical Request and a FCDC grievance, both stating that Dr. Stewart was "denying [him] medical treatment" by not sending him to the hospital or ordering an MRI. *Id., Ex. A-4 at 57, & Ex. A-2 at 35.* Nurse Munyan provided the following response to the Inmate Medical Request: "This nurse cannot answer for the doctor and the decisions he makes. What he is saying is that you can't put someone with metal rods into a MRI." *Id., Ex. A-4 at 57.* Sgt. Page responded to Forrester's grievance by advising him to submit a medical request. *Id., Ex. A-2 at 35.*

14.    On October 20, 2017, Forrester filed two Inmate Medical Requests, asking if would be going to the hospital soon. On October 21, 2017, he filed an Inmate Medical Request stating his "left leg is getting worse everyday" and he needed to "get … to hospital." Nurse Munyan responded that Dr. Stewart must order

---

[6]Dr. Stewart noted, on both October 12 and 19, that he "suspected" Forrester wanted to see him because he had "issues of secondary gain." *Doc. 38, Ex. A-3 at 155 & 160.* This vague statement *may* have related to Dr. Stewart's belief that Forrester was trying to convince him to prescribe stronger prescription pain medication, including opioids. For purposes of evaluating Defendants' Motion for Summary Judgment, the Court places *no weight* on whatever that "secondary gain" might have been.

"a trip to the hospital and he has not done so." *Id., Ex. A-4 at 56-57*.

15.     On October 23, 2017, Forrester appeared in Faulkner County Circuit Court and pleaded guilty to the criminal charges against him. He was sentenced to sixty months in the Arkansas Department of Correction ("ADC"). *See State v. Forrester,* Faulkner Co. Cir. Ct. Case No. CR 2016-608 (Oct. 23, 2017 Sentencing Order).[7]

16.     Later on October 23, 2017, Forrester submitted four Inmate Medical Requests, stating that, because he was "ADC bound," he needed to get to the hospital for an MRI "A.S.A.P." *Doc. 38, Ex. A-4 at 52-55.* In the last request, he stated:

> Listen you know and the doctor knows that I've got two rods in my lower back and you both keep putting off getting the proper medical treatment that I need. I fell in the bathroom over at unit 2[8] and then I fell getting out of the van over here at unit 1. Are you going to keep denying me medical treatment that you both know that I should be getting. If you keep denying you're going to be in my 1983 lawsuit. The doctor got served you will be next.

*Id., Ex. A-4 at 52*. On the morning of October 24, Nurse Munyan responded to Forrester's requests, informing him that, because he had been sentenced to the ADC, the FCDC medical staff was now required to obtain approval from the ADC before providing him with any of the requested medical care. Nurse Munyan instructed him

---

[7]*See* https://caseinfo.arcourts.gov/cconnect.

[8]This fall in Unit 2 gave rise to a separate § 1983 action filed shortly before Forrester initiated this lawsuit. *See Forrester v. Flowers,* E.D. Ark. No. 4:17cv00656-PSH.

to submit his medical complaints on an ADC Health Service Request Form ("HSRF"), which would then be faxed to the ADC for action. *Id., Ex. A-4 at 52-55.*

17.     On October 24, 2017, Forrester filed five Inmate Medical Requests. Nurse Munyan again responded that all medical treatment needed to be approved by the ADC and instructed him to complete an ADC HSRF. *Id., Ex. A-4 at 49-51.*

18.     On October 26, 2017, FCDC medical staff faxed a HSRF to the ADC, requesting approval for Forrester's medications. *Id., Ex. A-4 at 42-43.*

19.     On October 25, 2017, Forrester completed an ADC HSRF, stating:

> I have 2 rods in my lower back and I fell out of the transport van and my left leg is going numb. Every day it gets worse. I need an MRI to see what is done when I fell. I've asked. My back is really hurting bad.

*Id, Ex. A-4 at 47.* On October 26 and 27, 2017, he completed two more ADC HSRFs, stating that, due to his back pain and leg numbness, he needed an MRI and to see a "back doctor." *Id., Ex. A-4 at 40 & 44.*

20.     On October 31, 2017, FCDC medical staff faxed Forrester's HSRFs to the ADC. *Id, Ex. A-4 at 40, 44 & 47.* Between October 25 and November 1, 2017, Forrester submitted multiple Inmate Medical Requests and FCDC grievances, seeking to find out when he would hear from the ADC and requesting additional ADC HSRF forms. *Id., Ex. A-4 at 36-39 & 46, & Ex. A-2 at 23-25.*

21.     In written responses, dated November 1, 2017, the ADC advised Forrester that he should continue to follow FCDC nurses' orders and "medical [point

of care]." *Id., Ex. A-4 at 41 & 45.* The ADC did *not* approve Forrester's request to see a "back doctor" or to have an MRI.

22.     On November 2, 2017, Forrester submitted an Inmate Medical Request stating: "I don't know what is up but you people need to find out why they are not answer[ing] my sick calls. I need to see the doctor. Please can you find out for me." Nurse Munyan responded that the FCDC medical staff could not provide medical treatment for Forrester without ADC approval. *Id., Ex. A-4 at 33.*

23.     On November 6, 2017, Forrester submitted an ADC HSRF in which he sought approval for the following medical treatment: (1) a tooth that needed to be pulled; (2) back pain; and (3) his left leg, which was "about to stop working." FCDC medical staff forwarded that document to the ADC. *Id., Ex. A-4 at 34-35.*

24.     On November 9, 2017, Forrester filed this § 1983 action, alleging that Defendants were not providing "proper medical treatment" for his back pain and leg numbness caused by his fall on October 11, 2017. *Doc. 2 at 4.*

25.     On November 13, 2017, the ADC approved Forrester's request to see Dr. Stewart, the FCDC physician. *Doc. 38, Ex. A-4 at 35.*

26.     On November 21, 2017, Dr. Stewart evaluated Forrester for "chronic back pain" and weakness in his left leg. He observed that Forrester was "walking slower with a slight limp." During his examination of Forrester, Dr. Stewart noted "normal" DTR [deep tendon reflexes] and some weakness in the left lower

extremity, but no foot drop. He continued Forrester's prescriptions for naproxen and diclofenac, and added prednisone (a corticosteroid). *Id., Ex. A-3 at 165-66.*

27.    On December 11, 2017, Forrester submitted an ADC HSRF, complaining of tooth and back pain. On December 18, FCDC medical staff faxed the HSRF to the ADC. *Id., Ex A-4 at 12-13.*

28.    On December 19, 2017, Forrester submitted an Inmate Medical Request, asking to see the FCDC doctor "about [his] back and this cold that [he] can't get rid of." Nurse Munyan responded that the ADC had denied the request for a doctor visit. *Id., Ex. A-4 at 10.*

29.    Later on December 19, Forrester completed an ADC HSRF, again complaining about his back pain. On December 20, the FCDC faxed that document to the ADC. *Id., Ex. A-4 at 7-9.*

30.    On December 20, 2019, Nurse Munyan informed Forrester that the ADC had approved his request to see Dr. Stewart. *Id., Ex. A-4 at 6.*

31.    On December 21, 2017, Dr. Stewart examined Forrester, after hearing his complaints of chronic back pain. Dr. Stewart noted: "I see no evidence of debilitating pain." He discontinued the naproxen and diclofenac and prescribed a different anti-inflammatory medication. *Id., Ex. A-3 at 167.* The FCDC medical staff completed a HSRF requesting the ADC to approve the medication prescribed by Dr. Stewart. *Id., Ex. A-4 at 4-5.*

32.     According to Forrester's medical records, on December 22, 2017, he fell while showering at the FCDC. He reported extreme pain in his lower back and was unable to walk. The "county physician" (presumably Dr. Stewart) directed that Forrester be transported to the hospital. *Id., Ex. A-3 at 168-70*. At the hospital, CT scans of Forrester's pelvis and lumbar spine were "negative" with "[n]o evidence of acute fracture or subluxation." *Id. at 183-85*. The lumbar spine CT scan showed: "Normal L4-5 and L5-S1 osteophytic with screw and anterior interbody fusion with satisfactory positioning and alignment." *Id. at 185*. Because the CT scans were "negative for acute," Forrester was given pain medication and discharged. *Id. at 182*.[9]

33.     On December 29, 2017, Forrester was transported from the FCDC to the ADC to begin serving his state sentence. *Id., Ex. A-1 at 53*.

34.     According to an Affidavit from Dr. Stewart, following Forrester's October 11, 2017 fall, he consistently treated Forrester's symptoms with over-the-counter pain medications and recommended stretching exercises. Dr. Stewart states that the conservative treatment he ordered for Forrester's lower back pain was "medically appropriate." *Id., Ex. B ¶¶ 7 & 8*.

---

[9]This CT scan of Forrester's lumbar spine, which was taken only six weeks after Forrester filed this lawsuit, completely undermines his claim that his fall from the transport van, on October 11, 2017, caused an acute or traumatic injury to his lumbar spine in the area of his earlier back surgery.

35.     There is *no medical evidence* that Forrester sustained any traumatic injury related to his fall from the transport van. Rather, all of the medical evidence indicates that, after his fall, Forrester continued to have the same chronic lower back pain that he noted *before* the fall. Throughout the time Forrester was held in the FCDC, Nurse Munyan and Dr. Stewart provided regular and continuous medical care for Forrester's low back pain, and there is no evidence that either of those Defendants ever provided Forrester with delayed medical care for his complaints of lower back pain. *See id., Ex. B ¶¶ 7 & 8.*

36.     Finally, the record makes it clear that Forrester was regularly provided all prescribed medications during the time he was held in the FCDC. *Id., Ex. A-3 at 163-64, 166, 187-250.*

37.     FCDC policy provides that: (1) all medical decisions are left to the professional judgment of the medical staff; and (2) no other FCDC employees are authorized to make non-emergency medical decisions on behalf of any inmate. *Id., Ex. A ¶ 16* (Riedmueller Aff.), *& Ex. B ¶ 9.*

## II. Discussion

Defendants argue that they are entitled to summary judgment on the inadequate medical care claims Forrester has asserted against them. The Court agrees.

"[D]eliberate indifference to serious medical needs of prisoners constitutes

the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble,* 429 U.S. 97, 104 (1976).[10] To proceed to trial on his inadequate medical care claims, Forrester must come forward with evidence demonstrating that: (1) he "suffered objectively serious medical needs"; and (2) Defendants subjectively "knew of but deliberately disregarded those needs." *Hamner v. Burls,* No. 18-2181, 2019 WL 4283629 at *3 (8th Cir. Sept. 11, 2019).

Defendants do not dispute that Forrester had an objectively serious medical need related to his chronic lower back pain. Thus, the only issue is whether there is evidence that any of the Defendants were deliberately indifferent to his *continuing* lower back pain, after he fell from the transport van on October 11, 2017.

Prison officials may not "deliberately delay or deny prisoners' medical care," but a prisoner "must show more than negligence, more even than gross negligence," to make out a constitutional violation. *Hamner, supra* at *3. Deliberate indifference may, however, be found where "medical care is so inappropriate as to evidence intentional maltreatment," or amounts to "criminal recklessness." *Johnson v. Leonard,* 929 F.3d 569, 575-76 (8th Cir. 2019). Significantly, prisoners "have no right to receive a particular or requested course of treatment," and prison doctors

---

[10]From July 29 through October 23, 2017, Forrester appears to have been a pretrial detainee. After his conviction and sentencing on October 23, 2017, until his transfer to the ADC on December 29, 2017, Forrester was a convicted prisoner. The Eighth Circuit applies the same "deliberate indifference" standard to inadequate medical care claims whether brought by pretrial detainees, under the Fourteenth Amendment, or by convicted prisoners, under the Eighth Amendment. *See Davis v. Oregon County,* 607 F.3d 543, 548 (8th Cir. 2010).

13

"remain free to exercise their independent medical judgment." *Barr v. Pearson,* 909

F.3d 919, 921 (8th Cir. 2018). It is well-settled that a prisoner's "mere difference of

opinion over matters of expert medical judgment or a course of medical treatment

fails to rise to the level of a constitutional violation." *Id.* at 921-22 (citations

omitted).

In support of their Motion for Summary Judgment, Defendants have

submitted: (1) Forrester's FCDC arrest and booking records; (2) his FCDC

grievances; (3) his FCDC medical file; (4) his FCDC Inmate Medical Requests; (5)

the FCDC Policies and Procedures; (6) an Affidavit from Chris Riedmueller, the

FCDC jail administrator, stating that all medical decisions are "left to the

professional medical judgment" of the FCDC medical staff; and (7) an Affidavit

from Dr. Stewart stating that the treatment provided to Forrester for his back pain

was "medically appropriate." *See Doc. 38.*

Defendants' record evidence in support of their Motion for Summary

Judgment is sufficient, under Rule 56, to shift the burden to Forrester to "discard the

cloak of formal allegations and meet proof with proof" as to his deliberate

indifference claim. *Conseco Life Ins. Co. v. Williams,* 620 F.3d 902, 909 (8th Cir.

2010). Forrester has neither presented such proof nor contested any of the facts

contained in Defendants' Statement of Indisputable Facts. Accordingly, all of those

facts are now *undisputed.*

### A. Forrester's Inadequate Medical Care Claims Against Dr. Stewart and Nurse Munyan

According to Forrester's pleadings, after his October 11, 2017 fall, he did not get any medical help for two weeks and did not see the doctor for three weeks. He alleges that, although he asked Dr. Stewart to get him to a hospital for an MRI and to see a "back doctor," Dr. Stewart did "nothing," except provide him with medications that "did not work." He alleges that he asked Nurse Munyan several times to get him to the hospital, but Nurse Munyan "did not do anything" to help him and only said he would "see what the doctor said." *Doc. 2 at 4; Doc. 6 at 2-3.*

*All* of these bare allegations in Forrester's Complaint and Amended Complaint allege that he received "no" medical help for two weeks after he fell from the van, and that Dr. Stewart and Nurse Munyan did "nothing." Those allegations are *flatly refuted* by the undisputed medical evidence. According to the FCDC's records, after Forrester fell, on the night of October 11, 2017, he first requested medical treatment at 10:49 a.m. the next day. *On that same day* (October 12): (1) medical staff observed Forrester "from [the] tower" and saw no evidence of distress or restricted movement; (2) Dr. Stewart reviewed Forrester's medical chart and ordered the continuation of "conservative care" for his chronic lower back pain, which included the same medications he had prescribed earlier for the chronic back pain Forrester complained about shortly after he was admitted to the FCDC on July 29, 2017; (3) Nurse Munyan responded in writing to Forrester's Inmate Medical

Requests and told him he would be seen in sick call the next day; and (4) Sgt. Page responded in writing to Forrester's grievances and told him to submit medical complaints to the medical staff.

*The next day* (October 13), Forrester was examined by medical personnel, and his "point of care" was continued. Six days later (October 19), he was examined by Dr. Stewart, who ordered Forrester to continue his medications to help alleviate the back pain he was experiencing. On November 21, Dr. Stewart again examined Forrester, ordered him to continue his medications, and added another one. Finally, on December 21, Dr. Stewart examined Forrester, observed no evidence of debilitating pain, and again adjusted the pain medications.

In between these visits, Nurse Munyan promptly answered Forrester's many Inmate Medical Requests; appropriately deferred to Dr. Stewart regarding the course of his prescribed medical treatment for Forrester; repeatedly explained to Forrester the process for getting ADC approval for medical treatment once he was sentenced to the ADC; and relayed to Forrester the decisions made by the ADC regarding the appropriate course of medical treatment.

According to his pleadings, Forrester *subjectively believed* that he required an MRI of his lumbar spine, and an appointment with a "back doctor." According to Forrester, after his fall, it felt like the metal rods in his back were "coming apart." *Doc. 6 at 1.* However, neither Dr. Stewart nor the ADC medical staff believed an

16

MRI or an appointment with a back specialist was needed. Courts have repeatedly held that:

> [T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like [diagnostic] measures, does not represent cruel and unusual punishment. At most it is medical malpractice.

*Estelle*, 429 U.S. at 107; *see also Barr,* 909 F.3d at 922 (holding that a prisoner's disagreement with the state-contracted health care providers' course of treatment for multiple sclerosis was "not enough" to rise to the level of a constitutional violation); *Fourte v. Faulkner County,* 746 F.3d 384, 390 (8th Cir. 2014) (finding no deliberate indifference when medical providers "made efforts to cure the problem in a reasonable and sensible manner").

Furthermore, after Forrester had another fall, while taking a shower on December 22, 2017, he was immediately taken to the hospital and received a CT scan of his lumbar spine. The radiologist who read the CT scan noted that the area of Forrester's previous back surgery was "*normal* L4-5 and L5-S1 osteophytic with screw and anterior interbody fusion with *satisfactory positioning and alignment.*" *Doc. 38, Ex. A-3 at 185* (emphasis added). In the face of this objective and undisputed medical evidence, Forrester cannot plausibly contend that his constitutional rights were violated because he did not receive this CT scan immediately after his October 11, 2017 fall, which only would have confirmed that

everything was *normal* in the area where he had his earlier back surgery.

At most, Forrester's allegations of "inadequate medical care" amount to his personal disagreement with the medical judgment of Dr. Stewart and Nurse Munyan, both of whom believed that his chronic lower back pain and leg numbness should be treated conservatively. The December 22, 2017 CT scan directly supports their sound medical judgment regarding the treatment they prescribed.

Forrester has failed to come forward with *any facts* suggesting that Dr. Stewart and Nurse Munyan "knew of but deliberately disregarded" Forrester's need for medical care for his back pain. It is well-established that, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate," a prisoner cannot "create a question of fact by merely stating that [he] did not feel [he] received adequate [medical] treatment." *Cejvanovic v. Ludwick,* 923 F.3d 503, 507-08 (8th Cir. 2019) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1240 (8th Cir. 1997)).

Finally, Forrester has not come forward with any evidence that he was harmed by any short delay that may have taken place between the time he requested medical care and the time he was seen by Dr. Stewart, Nurse Munyan or other medical personnel. *See Corwin v. City of Independence,* 829 F.3d 695, 698-99 (8th Cir. 2016) (affirming grant of summary judgment where inmate claimed that nurse failed to obtain more timely medical care from a doctor for his injured hand, but did not place

medical evidence in the record to establish that the five-day delay in medical care caused him to suffer a detrimental effect); *Jackson v. Riebold,* 815 F.3d 1114, 1119-20 (8th Cir. 2016) (stating that an inmate must place "verifying medical evidence" in the record to establish the detrimental effect of a delay in medical treatment).

Accordingly, because the undisputed facts demonstrate that Dr. Stewart and Nurse Munyan were not deliberately indifferent to Forrester's serious medical needs, the Court concludes that they are entitled to summary judgment on the inadequate medical care claims he has asserted against them.

## B. Forrester's Inadequate Medical Care Claims Against Sgt. Page and Officer Humphrey

Forrester alleges that: (1) when he fell getting out the van on October 11, 2017, Sgt. Page was standing "right there"; (2) Officer Humphrey "came out and helped [Forrester] get off the ground"; (3) Forrester told Sgt. Page and Officer Humphrey that he had hurt his back; and (4) Sgt. Page should have taken him to the hospital or "called for a bus to come and take [him.]." *Doc. 2 at 4; Doc. 6 at 1-2.*

Non-medical prison officials, like Sgt. Page and Officer Humphrey, can be held liable for their role in providing inadequate or delayed medical care if their actions are willful, intentional and deliberate. *See Estelle*, 429 U.S. at 104-05. However, lacking professional medical expertise, a prison official, as a layperson, cannot be liable for failing to recognize symptoms or medical conditions that would only be apparent to someone with medical training or experience. *See Barton v.*

*Tabor,* 908 F.3d 1119, 1124 (8th Cir. 2018) (a medical need is objectively serious if "it has been diagnosed by a physician as requiring treatment" or "it is so obvious that even a layperson would easily recognize the necessity for a doctor's attention"); *Jones v. Minnesota Dept. of Correction,* 512 F.3d 478, 482-83 (8th Cir. 2008) (prisoner's symptoms were "not easily recognizable medical issues" and were "not so obvious that a layperson would easily recognize the need for a doctor's immediate attention"); *see also Keeper v. King,* 130 F.3d 1309, 1314 (8th Cir. 1997) (prison official who lacked medical expertise, and who was not involved in treatment decisions made by medical staff, "cannot be liable for the medical staff's diagnostic decisions").

FCDC policy expressly provides that all medical decisions are left to the professional judgment of the medical staff, and that no other FCDC employees are authorized to make non-emergency medical decisions on behalf of any inmate. Immediately after his fall on October 11, there was nothing about Forrester's condition that was "so obvious" that even a layperson would easily recognize the need for immediate medical attention. While Forrester makes the allegation that he told Sgt. Page and Officer Humphrey that his "back was really hurt" and he required emergency hospitalization, they saw nothing suggesting an obvious medical problem that required Forrester to be taken to the hospital.

Finally, Forrester did not file a grievance or an Inmate Medical Request until

the day after his fall, and, as soon as he did, Sgt. Page responded promptly and appropriately. Sgt. Page also responded promptly to Forrester's many other FCDC grievances, telling him to direct his medical complaints to the medical staff. There is simply no evidence that Sgt. Page or Officer Humphrey "knew of but deliberately disregarded" Forrester's serious medical needs after he fell while exiting the transport van.

Accordingly, Sgt. Page and Officer Humphrey are entitled to summary judgment on all of the inadequate medical care claims Forrester has asserted against them.

### C. Forrester's Retaliation Claim Against Dr. Stewart

Defendants do not address Forrester's claim that Dr. Stewart refused to treat him "because of [his] other [earlier] lawsuit [against Dr. Stewart]." *Doc. 2 at 4*. However, because Forrester fails to offer *any evidence* that supports a retaliatory motive for Dr. Stewart's actions, the Court concludes, *sua sponte,* that this claim fails as a matter of law. "Merely alleging that an act was retaliatory is insufficient." *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007). Instead, a prisoner alleging retaliation "has a heavy evidentiary burden to establish a prima facie case," and, to avoid summary judgment, he "must submit 'affirmative evidence' [of] a retaliatory motive." *Id.; Lewis v. Jacks,* 486 F.3d 1025, 1029 (8th Cir. 2007).

Furthermore, in light of the previously discussed medical records, Forrester has failed to establish that Dr. Stewart took any "adverse action" against him in the medical treatment Dr. Stewart regularly and consistently provided to him. *See Lewis,* 486 F.3d at 1028 (to succeed on a § 1983 retaliation claim, prisoner must prove that he engaged in protected activity, that defendants took "adverse action" against him that would "chill a person of ordinary firmness from engaging in that activity," and that retaliation was the actual motivating factor for the adverse action). The medical records show that Dr. Stewart and other FCDC medical staff continuously provided medical care to Forrester despite the fact that he had sued them in another lawsuit. In fact, those records show that: (1) Dr. Stewart examined Forrester and prescribed medications for him on October 19, 2017, *the day after he was served with the summons and complaint in Forrester's other lawsuit*; and (2) Dr. Stewart continued to provide medical care to Forrester throughout the relevant time period. *See Doc. 38, Ex. A-3 at 160; Forrester v. Flowers, supra* at ECF No. 7.

Accordingly, Dr. Stewart is entitled to summary judgment on Forrester's retaliation claim.

### III. Conclusion

For all the foregoing reasons, the Court concludes that Defendants are entitled

to summary judgment on all of Forrester's claims.[11]

IT IS THEREFORE ORDERED THAT:

1.      Defendants' Motion for Summary Judgment (*Doc. 37)* is GRANTED.

2.      Forrester's claims against Defendants Sgt. Rusty Page, Officer Andrew Humphrey, Dr. Garry Stewart and Nurse Monte Munyan, are DISMISSED, WITH PREJUDICE.

IT IS SO ORDERED this 23rd day of September, 2019.

_____
UNITED STATES MAGISTRATE JUDGE

---

[11]Defendants have also raised the defense of qualified immunity. However, because the Court concludes that there is no evidence of any constitutional violations, there is no need to address qualified immunity as an alternative reason for granting summary judgment. *A.H. v. St. Louis County,* 891 F.3d 721, 726-27 (8th Cir. 2018) ("As we agree with the district court that Plaintiffs failed to prove a violation of Hartwig's Fourteenth Amendment rights, we need not address qualified immunity."); *Schmidt v. City of Bella Villa,* 557 F.3d 564, 574 (8th Cir. 2009) ("Since we find no constitutional violation, we need not address the issue of qualified immunity.").